**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

CHARLIE RUIZ-RUIZ and
SINDIEBELL CRUZ-VALENTIN,

**Defendants.**

**CRIMINAL NO. 22-232(RAM)**

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

This matter comes before the Court on Defendants Charlie Ruiz-Ruiz's ("Defendant Ruiz" or "Ruiz") and Sindiebell Cruz-Valentín's ("Defendant Cruz" or "Cruz") (collectively, "Defendants") *Motion for Reconsideration and to Extend Suppression Motion Deadline, or for Interlocutory Appeal/Mandamus, and to Compel Discovery* ("*Motion*"). (Docket No. 366). The *Motion* is **DENIED**.

**I.    PROCEDURAL BACKGROUND[1]**

On May 26, 2022, a grand jury in the District of Puerto Rico returned an *Indictment* charging Defendants[2] with conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) & (B) and 846; possession with intent to distribute fentanyl, in violation of 21

---

[1] For additional details, see the Opinion and Order issued on May 13, 2025, at Docket No. 328.

[2] Three other defendants were also indicted in this case for conspiracy to possess with intent to distribute controlled substances, as well as some of the other charges according to their individual involvement. (Docket No. 3).

U.S.C. §§ 841(a)(1) & (b)(1)(A)(vi) and 18 U.S.C. § 2; possession
with intent to distribute cocaine, in violation of 21 U.S.C.
§§ 841(a)(1) & (b)(1)(A)(ii) and 18 U.S.C. § 2; and possession
with intent to distribute marijuana, in violation of 21 U.S.C.
§§ 841(a)(1) & (b)(1)(B)(vii) and 18 U.S.C. § 2. (Docket No. 3).
Defendant Ruiz was also charged with maintaining a drug-involved
premises, in violation of 21 U.S.C. § 856(a)(2). Id. at 7.

On February 14, 2025, Defendants filed both a *Motion to
Dismiss* and a *Motion to Suppress*. (Docket Nos. 270 and 271). After
the matter was fully briefed, the Court denied the *Motion to
Dismiss* on March 13, 2025. (Docket No. 292). On May 13, 2025, the
Court denied Defendant's *Motion to Suppress*. (Docket No. 328).

Regarding the *Motion to Suppress*, Defendants had moved to
suppress all evidence obtained from: (1) an executed anticipatory
search warrant on their property on February 5, 2021, that
allegedly lacked the requisite probable cause and triggering
condition at the time of its execution; (2) an allegedly
warrantless search of a Porsche Cayenne, with the warrant granted
retrospectively on February 8, 2021; and (3) allegedly illegal
searches of electronic devices[3] initiated without proper judicial
authorization, prior to the digital warrants' issuance on February

---

[3] The electronic devices were seized from Defendants' property during the
execution of the anticipatory warrant on February 5, 2021.

23, 2021. (Docket No. 271). The Government filed a *Response to Defendants' Motion to Suppress*. (Docket No. 288). Defendants filed a *Reply*. (Docket No. 295). The Government filed a *Sur-Reply*. (Docket No. 298).

On April 2, 2025, the Defendants filed a *Motion to Compel*, in which they furthered their argument that the Government allegedly conducted illegal forensic analysis on the seized electronic devices prior to the issuance of the February 23, 2021, warrant, thus warranting suppression. (Docket No. 299). The Government filed a *Response*. (Docket No. 303). On April 14, 2025, the Court denied the *Motion to Compel*, finding the request to compel premature and that Defendants failed to supply a proper offer of proof explaining and corroborating their disparate forensic findings. (Docket No. 305). On April 16, 2025, Defendants filed for reconsideration. (Docket No. 306). The Government responded and Defendants replied. (Docket No. 319 and 324, respectively). The Court denied the reconsideration on May 12, 2025. (Docket No. 326).

While that reconsideration was pending, on April 21, 2025, Defendants filed a *Motion to File Video Exhibits in Support of Defendants' Motion to Suppress Evidence*, which the Court granted. (Docket Nos. 313 and 314, respectively).

Criminal No. 22-232 (RAM)                                          4

On May 13, 2025, the Court denied the *Motion to Suppress*. (Docket No. 328). After being granted multiple extensions, Defendants filed a *Motion for Reconsideration* of this denial on June 4, 2025. (Docket No. 344). The Court denied the *Motion for Reconsideration* on June 6, 2025. (Docket No. 345).

Of note, in its denial of the *Motion to Suppress*, the Court denied without prejudice Defendants' arguments regarding forensic analysis on the seized electronic devices. (Docket No. 328). At the status conference held on May 29, 2025 (the "Status Conference"),[4] the Court granted Defendants thirty-five days "to have a forensics report in hand," noting that any further motions to suppress regarding the seized electronic devices were due twenty-one days "from production of the expert reports." (Docket No. 343). The Court further highlighted this in an Order issued on June 2, 2025:

> Defendants Charlie Ruiz-Ruiz (1) and Sindiebell Cruz-Valentin (2) have until **July 3, 2025,** for an expert to produce a report on the forensic analysis of the seized electronic devices. **Defendants shall file an Informative Motion upon receiving the expert's report. If Defendants fail to file an Informative Motion by July 3, 2025, the motion to suppress shall be deemed waived.** The deadline for submission of a further motion to suppress based on the expert's report (**within 21 days from Defendants' receipt of the expert's report**) shall apply to any other pre-trial motions, except for motions for reconsideration.

---

[4] The transcript for the Status Conference is at Docket No. 358.

Criminal No. 22-232 (RAM)                                              5

(Docket No. 342).

On July 3, 2025, Defendants submitted an *Informative Motion regarding Submitting Forensic Report* and a *Joint Motion Submitting Forensic Report*. (Docket Nos. 350 and 352, respectively). The Government responded. (Docket No. 353).

On July 8, 2025, the Court ordered Defendants to provide under seal all communications between defense counsel and the independent forensic investigator (Garrett Discovery Inc.) from May 27 to July 3, 2025. (Docket No. 355). The Court also ordered the Government to file an informative motion detailing the exact dates and what specific materials they provided to Defendants for their independent forensic examination. (Docket No. 354). After receiving the parties' motions, the Court issued the following Order on July 18, 2025:

> Having reviewed the record and recent informative motions regarding Defendants' communications with Garret Discovery Inc. and discovery productions from the Government, it is clear Defendants had ample time to retain a forensic expert and retrieve the mirror images of the seized electronic devices from the Government for an independent forensic examination. Yet, the Court notes that the Informative Motion and Joint Motion submitting Forensic Report filed on July 3, 2025, contained only a letter regarding Garret Discovery Inc.'s initial review of the limited materials provided by Defendants instead of an expert forensic analysis report. The Court advises Defendants that the **July 24, 2025,** deadline to submit a further motion to suppress regarding the seized electronic devices or any other pretrial motions is final. **No extensions shall be granted.**

(Docket No. 365).

On July 23, 2025, Defendants filed the present *Motion*, seeking reconsideration of this order and extension of the final deadline, or in the alternative, request this Court certify this issue for interlocutory appeal or recommend mandamus. (Docket No. 366). Additionally, they renew their argument to compel discovery from the Government. Id.

## II.   LEGAL STANDARD

Under First Circuit precedent, reconsideration is "an extraordinary remedy which should be used sparingly." U.S. ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 127 (1st Cir. 2013) (internal quotation omitted). Thus, a district court may **only** grant a reconsideration if there is a "manifest error of law, [...] newly discovered evidence, or in certain other narrow situations [such as a change in controlling law]." United States v. Peña-Fernández, 394 F.Supp. 3d 205, 207 (D.P.R. 2019) (quoting Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014)).

Indeed "[w]hen the motion simply regurgitates contentions that were previously made and rejected, the movant has no legal basis to insist upon reconsideration." Liu v. Mukasey, 553 F.3d 37, 39 (1st Cir. 2009); *see also* Santa Cruz-Bacardi v. Metro Pavia Hosp., Inc., Civil No. 16-2455, 2019 WL 44553620, at *2 (D.P.R.

Sept. 17, 2019) (motion for reconsideration "**unavailable if said request simply brings forth a point of disagreement between the court and the litigant.**" (quoting <u>Figueroa Carrasquillo v. Drogueria Cent., Inc.</u>, Civil No. 13-1718, 2018 WL 8584211, at *2 (D.P.R. July 30, 2018))). Further, it may not be brought by a losing party to "raise legal theories that should have been raised earlier." <u>Teamcare Infusion Orlando, Inc. v. Humana Health Plans of P.R.</u>, Civil No. 14-1741, 2018 WL 9412924, at *6 (D.P.R. Sept. 24, 2018) (citation omitted). **Hence, a reconsideration does "not provide a vehicle for a party to undo its own procedural failures."** <u>Peña-Fernández</u>, 2019 WL 3716472, at *2 (quotation omitted).

### III. ANALYSIS

### A. Motion for Reconsideration

Defendants describe the Court's prescribed deadline after an exceedingly generous timeline for pursuing independent forensic examination and submitting a further motion to suppress as a "premature cut-off [that] is erroneous and highly prejudicial." (Docket No. 366 at 1). The Court simply disagrees. *See* <u>Santa Cruz-Bacardi</u>, 2019 WL 44553620 at *2 (finding reconsideration "unavailable if said request simply brings forth a point of disagreement between the court and the litigant" (citation omitted)). Moreover, Defendants are not presenting newly

Criminal No. 22-232 (RAM)                                                  8

discovered evidence in this *Motion for Reconsideration*, proffering

a change in controlling law, or demonstrating a manifest error in

law occurred. *See* Biltcliffe, 772 F.3d at 930.

For a clear look at the deadline Defendants claim is a

"premature cut-off", the Court provides this simplified timeline

to show the multiple opportunities Defendants have been granted to

conduct independent forensic examination and file a *further* motion

to suppress:

| Docket No. | Document Title | Date Filed |
|---|---|---|
| 3 | Indictment | 5/26/2022 |
| 271 & 274 | Motion to Suppress & Appendices | 2/14/2025 |
| 288 | Govt. Response to Motion to Suppress | 3/10/2025 |
| 295 | Defendant Reply | 3/24/2025 |
| 298 | Govt. Sur-reply | 4/1/2025 |
| 299 | Motion to Compel Discovery & to Permit Independent Forensic Examination of Seized Electronic Devices ("Motion to Compel") | 4/2/2025 |
| 303 | Govt. Response to Motion to Compel | 4/10/2025 |
| 305 | Opinion & Order denying Motion to Compel | 4/14/2025 |
| 306 | Motion for Reconsideration of [305] Denial of Motion to Compel | 4/16/2025 |
| 313 | Motion to File Video Exhibits in Support of Defendants' Motion to Suppress | 4/21/2025 |
| 314 | Order granting [313] Motion to File Video Exhibits | 4/23/2025 |
| 319 | Govt. Response to [306] Reconsideration | 4/29/2025 |
| 324 | Defendant Reply | 5/7/2025 |
| 326 | Opinion & Order denying Reconsideration | 5/12/2025 |
| 328 | Opinion & Order denying Motion to Suppress | 5/13/2025 |
| 343 | Status Conference | 5/29/2025 |
| 342 | Order requiring Informative Motion upon Receipt of Expert's Report | 6/2/2025 |
| 344 | Motion for Reconsideration of [328] Denial of Motion to Suppress | 6/4/2025 |

Criminal No. 22-232 (RAM)                                                    9

| 350 & 352 | Informative Motion regarding Submitting Forensic Report & Joint Motion Submitting Forensic Report | 7/3/2025 |
|---|---|---|
| 365 | Order advising Defendants of July 24, 2025, Deadline | 7/18/2025 |
| 366 | Motion for Reconsideration of [365] Order | 7/23/2025 |

This timeline solely reflects what has occurred on the case's docket and does not show discovery production between the parties over the course of the case's entirety. Counsel's protracted efforts have delayed deadlines and postponed the trial for a case that was first indicted in 2022. Moreover, Defendants still fail to produce a satisfactory reason why they did not seek and contract an independent forensic expert months ago – or, upon finally signing a contract roughly a month after its misrepresentations to the court, why they failed to provide the expert with all raw materials and mirror images of electronic devices available to them at that point in time.

Again, the lack of candor by Defendants in their *Motion* on this topic is unacceptable given the Court's patience thus far. To highlight this is the discussion surrounding Defendants' contracting of an independent forensic examiner. At the Status Conference, the Court had the following exchange with defense counsel:

Criminal No. 22-232 (RAM)                                    10

15          THE COURT:  No.  What she said is that she provided

16    the mirror images.  Now, to access that information, you of

17    course need forensic support.

18          So my question to you is:

19          Have you retained, signed a contract and done whatever

20    steps are necessary, to retain a forensics expert as of today,

21    May 29, 2025?

22          MR. CASTRO-LANG:  Yes.  In fact, your Honor, we have

23    spoken --

24          THE COURT:  My question is not "spoken,"

25    Mr. Castro-Lang.  I want to know if you have hired, contracted,

1    retained, found someone to provide forensic services to

2    Defendant Ruiz-Ruiz.

3          MR. CASTRO-LANG:  Yes, your Honor.  We have.  We have

4    to pay the retainer.  It's going to be paid today.

5          THE COURT:  Do you have an engagement letter or a

6    proposal?

7          MR. CASTRO-LANG:  What's that?

8          THE COURT:  Do you have an engagement letter from this

9    expert or a proposal from that expert?

10          MR. CASTRO-LANG:  Yes.  Like I say, we provided him

11    already the Cellebrite reports of the government.  And his

12    preliminary examination was that it reflected intervention

13    prior to the 23rd.  But he said, look.  I need to make a

14    complete examination to arrive to a final conclusion.

(Docket No. 358 at 5-6).

Criminal No. 22-232 (RAM)                                        11

```
 3        THE COURT:  But at the end of the day -- this is where
 4   we are talking past each other -- if you identify the need,
 5   then you don't need me to hire the expert, and you have yet to
 6   close that loop.
 7        You have told me today that you have yet to pay the
 8   expert's retainer.  You have not retained an expert as of today
 9   because you have not paid the retainer.
10        MR. CASTRO-LANG:  He's going to be paid today.
```

Id. at 14.

     The Status Conference on May 29, 2025, commenced at 11:49
a.m. and adjourned at 12:20 p.m. Id. at 2, 18. Bearing in mind
those timestamps, the Court next points to Defendants' own
submissions regarding defense counsel's communications with the
independent forensic examiner that was ultimately hired, Garrett
Inc. Discovery. (See Docket No. 350-2). Defense counsel first
reached out to the Garrett Discovery Team on May 27, 2025. Id. at
2-3. Of specific interest to the Court is when Garrett Discovery
Inc. then replied to defense counsel – May 29, 2025, at 12:19 p.m.
– one minute before the end of the Status Conference. Id. at 1.
The contents of that email *flatly contradict* the representations
defense counsel made to the Court at the Status Conference because
Defendants had not even received an initial reply email from
Garrett Discovery Inc., much less an engagement or intake letter:

---------- Forwarded message ---------
From: **Clayton Schilling** <cschilling@garrettdiscovery.com>
Date: Thu, May 29, 2025 at 12:19 PM
Subject: RE: Request for Forensic Analysis and Court-Ready Report - Pre-Warrant Phone Extraction Analysis
To: Rafael Castro <rafacastrolang@gmail.com>


Good afternoon, Counselor,


Thank you for reaching out to Garrett Discovery regarding your forensic analysis needs for the pending federal criminal matter in the United States District Court for the District of Puerto Rico. We appreciate the detailed information provided and understand the critical nature of your request.


Garrett Discovery is well-equipped to assist with the forensic evaluation of the Cellebrite-generated discovery to address your objectives. Our team can analyze the provided extraction reports to investigate potential pre-warrant data extraction by examining metadata, timestamps, and any embedded logs. We can also assess for signs of tampering or unauthorized data manipulation and prepare a comprehensive, court-ready forensic report suitable for supporting your suppression motion. Our reports are designed to meet federal court standards, presenting findings clearly and defensibly. Based on the review of existing material, we can provide guidance on additional discovery that would be needed to support your case.


Our process begins with our client intake form located here: https://www.garrettdiscovery.com/client-intake/ . Once I get your case entered into our system, I will send you either an Engagement Letter (CJA cases) or a Service Agreement with estimate followed by a Trust request. For CJA cases, once we receive the signed letter, we wait for the authorization order. For all other cases, once we receive the signed service agreement and trust payment, your case will be moved over to the examination side. An examiner will reach out to obtain the discovery material and complete the necessary reviews, identifying missing material, and preparing a report when all review and examination activities have concluded.


We are committed to supporting your legal strategy and ensuring a thorough, defensible forensic analysis.


Thank you for considering Garrett Discovery for this critical matter. We look forward to your response.

Id.

     Not only did defense counsel fail to have an engagement letter or a proposal from an expert as he represented to the Court, but he had yet to fill out a client intake form to begin Garrett Discovery Inc.'s process. (*See* Docket No. 358 at 6). More egregiously, defense counsel explicitly lied by saying that Defendants had already provided the Cellebrite reports of the Government and the expert's "preliminary examination was that it reflected intervention prior to the 23rd." *See* id. Nothing from

that email indicates a review of any materials was conducted.
Instead, it explicitly states that *after* receiving the signed
service agreement and trust payment the case "will be moved over
to the examination side" where "[a]n examiner will reach out to
obtain the discovery material and complete the necessary reviews."
(*See* Docket No. 350-2 at 1). **Furthermore, defense counsel did not
pay the retainer for Garrett Discovery Inc. on the day of the
Status Conference as he represented would happen. The engagement
was not formalized with a signed contract until June 25, 2025 —
almost a month later:**



July 3, 2025

Rafael Castro Lang
Castro & Castro Law Offices
P.O. Box 9023222
San Juan, PR 00902

Re: United States v Charlie Ruiz Ruiz

Mr. Castro Lang,

Thank you for entrusting Garrett Discovery with the forensic analysis of the electronic devices
related to the above-referenced matter. You initially contacted our firm in mid-June to assist with
this investigation, and the engagement was formalized with a signed contract on June 25, 2025.

On June 27, 2025, I spoke with your paralegal, Mr. Vega, to discuss the case and obtain the relevant
discovery materials. To date, we have received the following:

- PDF versions of Cellebrite extraction reports
- HSI Report of Investigation concerning the electronic devices
- Search warrants corresponding to each device

Id.

While Defendants filed an Informative Motion on July 3, 2025, the accompanying document was a letter from Garrett Discovery Inc. to defense counsel regarding the *initial review* of materials provided, not an expert forensic analysis report. (*See* Docket No. 352). Moreover, the filings from the parties show that Defendants were late in hiring an expert, failed to provide the mirror images of the seized electronic devices and all raw materials available to them when contracting Garrett-Discovery Inc., and dragged their feet in picking up additional available discovery materials from the Government. (*See* Docket Nos. 362 and 364). Additionally, Defendants' allegations of pre-warrant searches of the electronic devices – the only remaining basis for a potential further motion to suppress – is contradicted by the initial review letter from Garrett Discovery Inc. on July 3, 2023, which states the "Cellebrite extraction logs indicate that the forensic imaging was not conducted until June 24, 2021." (*See* Docket No. 350-1 at 3).

Quite frankly, Defendants were lucky the Court did not deem the filing of a further motion to suppress waived on July 3, 2025, when they failed to submit a proper expert report with their Informative Motion, as required by the Court-ordered deadline of thirty-five days from the Status Conference. (*See* Docket No. 343 (allowing Defendants thirty-five days "to have a forensics report

in hand")). The request for reconsideration and an extension of the deadline to submit a further motion to suppress is **DENIED**.

### B. Available Discovery and the Motion to Compel

Defendants argue that their "ability to fully litigate critical Fourth Amendment suppression issues has been thwarted by the Government's ongoing failure to provide complete digital discovery necessary for a forensic analysis by the defense's expert." (Docket No. 366 at 1). The Court refers Defendants to its Opinion and Orders at Docket Nos. 305 and 326, denying the *Motion to Compel* and its reconsideration. As the Court noted in its Order from July 18, 2025, "it is clear [from the record that] Defendants had ample time to retain a forensic expert and retrieve the mirror images of the seized electronic devices from the Government for an independent forensic examination." (Docket No. 365).

At the Status Conference on May 29, 2025, the Government stated it produced the mirror images of five cellular devices to Defendants on May 1,[5] highlighting that these materials were not new discovery since it "had provided the cell phone extractions a long time ago." (Docket No. 358 at 2). Additionally, the Government stated the second batch of electronic devices would be ready to be produced on May 30, but they had yet to receive the external device

---

[5] The Court notes that the Government's *Informative Motion* corrects this date to May 2. (Docket No. 364 at 3).

Criminal No. 22-232 (RAM)                                                16

from Defendants to do so, despite telling them the materials were available. Id. at 3, 4. For a detailed record of relevant discovery production, the Government provided an informative motion with dates and specific materials provided to Defendants at Docket No. 364 – including acknowledgment pages signed by defense counsel.

Furthermore, to the extent Defendants argue they were unable to open the produced mirror images of the electronic devices, both the Government and the Court addressed that at the Status Conference. (Docket No. 358 at 3-4). The Government highlighted that the information given to Defendants was there on the produced device, merely unprocessed since it was the mirror images of the electronics, so Defendants would need to process it to see the information. Id. The Court reiterated this as well. Id. at 5 ("Now, to access that information, you of course need forensic support.") Yet Defendants, even as late as July 23, 2025, still sent emails to the Government stating they cannot access the data on an Apple or Windows device. (Docket No. 366 at 5). Notably, however, they failed to provide this raw data to their independent forensic examiner whose job would be to process this sort of information and materials.

For the reasons in its prior Opinion and Orders at Docket Nos. 305 and 326, as well as the matters addressed above, the Court **DENIES** the request to compel discovery.

C. **Request for Certification of Interlocutory Appeal or Recommendation for Mandamus**

In the alternative, Defendants ask the Court "to certify this issue for interlocutory appeal under 28 U.S.C. § 1292(b) or to recommend mandamus relief." (Docket No. 366 at 2). An issue is deemed waived under local rules for lack of developed argumentation. *See* United States v. Zanino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Nonetheless, the Court will address Defendants' request.

Section 1292(b) states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a **controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation,** he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Defendants do not have an issue with a controlling question of law, they have an issue with the Court's discretion in managing judicial proceedings. "The writ of mandamus has stringent

requirements and is generally thought an inappropriate prism through which to inspect exercises of judicial discretion." Da Garcia v. Souza, 991 F.3d 60, 64 (1st Cir. 2021) (internal quotation marks and citations omitted). Therefore, "[o]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary remedy." Id. (internal quotation marks and citations omitted); see also Cheney v. U.S. Dist. Ct. for D.C., 542 U.S. 367 (2004). Contrary to Defendants' description of their actions, the record shows and the Court finds there to be a patent lack of diligence by defense counsel, so mandamus should not lie.

Accordingly, the Court shall not certify an interlocutory appeal under 28 U.S.C. § 1292(b), nor shall it "recommend" mandamus relief.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendants' *Motion* at Docket No. 366.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 24th day of July 2025.

                              s/Raúl M. Arias-Marxuach
                              UNITED STATES DISTRICT JUDGE