**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| v. | **CRIMINAL NO. 22-232 (RAM)** |
| CHARLIE RUIZ-RUIZ and SINDIEBELL CRUZ-VALENTIN, | |
| **Defendants.** | |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendants Charlie Ruiz-Ruiz's ("Defendant Ruiz" or "Ruiz") and Sindiebell Cruz-Valentin's ("Defendant Cruz" or "Cruz") (collectively, "Defendants") *Motion to Suppress Digital Evidence and for Related Relief* ("*Second Motion to Suppress*"). (Docket No. 368). Also pending is the Government's *Response to Second Motion to Suppress* ("*Response*"). (Docket No. 376). For the following reasons, Defendants' *Second Motion to Suppress* is **DENIED**.

## I.    PROCEDURAL BACKGROUND[1]

On May 26, 2022, a grand jury in the District of Puerto Rico returned an *Indictment* charging Defendants[2] with conspiracy to possess with intent to distribute controlled substances, in

---

[1] For additional details, see the Opinion and Order issued on May 13, 2025, at Docket No. 328.
[2] Three other defendants were also indicted in this case for conspiracy to possess with intent to distribute controlled substances, as well as other charges according to their individual involvement. (Docket No. 3).

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) & (B) and 846; possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(vi) and 18 U.S.C. § 2; possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(ii) and 18 U.S.C. § 2; and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(vii) and 18 U.S.C. § 2. (Docket No. 3). Defendant Ruiz was also charged with maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(2). Id. at 7.

On February 14, 2025, Defendants filed both a *Motion to Dismiss* and a *Motion to Suppress*. (Docket Nos. 270 and 271). After the matter was fully briefed, the Court denied the *Motion to Dismiss* on March 13, 2025. (Docket No. 292). On May 13, 2025, the Court denied Defendant's *Motion to Suppress*. (Docket No. 328).

Regarding the *Motion to Suppress*, Defendants had moved to suppress all evidence obtained from: (1) an executed anticipatory search warrant on their property on February 5, 2021, that allegedly lacked the requisite probable cause and triggering condition at the time of its execution; (2) an allegedly warrantless search of a Porsche Cayenne, with the warrant granted retrospectively on February 8, 2021; and (3) allegedly illegal

searches of electronic devices[3] initiated without proper judicial authorization, prior to the digital warrants' issuance on February 23, 2021. (Docket No. 271). The Government filed a *Response to Defendants' Motion to Suppress*. (Docket No. 288). Defendants filed a *Reply*. (Docket No. 295). The Government filed a *Sur-Reply*. (Docket No. 298).

On April 2, 2025, the Defendants filed a *Motion to Compel*, in which they furthered their argument that the Government allegedly conducted illegal forensic analysis on the seized electronic devices prior to the issuance of the February 23, 2021, warrant, thus warranting suppression. (Docket No. 299). The Government filed a *Response*. (Docket No. 303). On April 14, 2025, the Court denied the *Motion to Compel*, finding that the request to compel was premature and that Defendants failed to supply a proper offer of proof explaining and corroborating their disparate forensic findings. (Docket No. 305). On April 16, 2025, Defendants filed a motion for reconsideration. (Docket No. 306). The Government responded and Defendants replied. (Docket Nos. 319 and 324, respectively). The Court denied the motion for reconsideration on May 12, 2025. (Docket No. 326).

---

[3] The electronic devices were seized from Defendants' property during the execution of the anticipatory warrant on February 5, 2021.

Criminal No. 22-232 (RAM)                                              4

While that reconsideration was pending, on April 21, 2025, Defendants filed a *Motion to File Video Exhibits in Support of Defendants' Motion to Suppress Evidence*, which the Court granted. (Docket Nos. 313 and 314, respectively).

On May 13, 2025, the Court denied the *Motion to Suppress*. (Docket No. 328). After being granted multiple extensions, Defendants filed a *Motion for Reconsideration* of this denial on June 4, 2025. (Docket No. 344). The Court denied the *Motion for Reconsideration* on June 6, 2025. (Docket No. 345).

Of note, in its denial of the *Motion to Suppress*, the Court denied without prejudice Defendants' arguments regarding forensic analysis on the seized electronic devices. (Docket No. 328). At the status conference held on May 29, 2025 (the "Status Conference"),[4] the Court granted Defendants thirty-five days "to have a forensics report in hand," noting that any further motions to suppress regarding the seized electronic devices were due twenty-one days "from production of the expert reports." (Docket No. 343). The Court further highlighted this in an Order issued on June 2, 2025:

> Defendants Charlie Ruiz-Ruiz (1) and Sindiebell Cruz-Valentin (2) have until **July 3, 2025,** for an expert to produce a report on the forensic analysis of the seized electronic devices. **Defendants shall file an Informative**

---

[4] The transcript for the Status Conference is at Docket No. 358.

> **Motion upon receiving the expert's report. If Defendants fail to file an Informative Motion by July 3, 2025, the motion to suppress shall be deemed waived.** The deadline for submission of a further motion to suppress based on the expert's report (**within 21 days from Defendants' receipt of the expert's report**) shall apply to any other pre-trial motions, except for motions for reconsideration.

(Docket No. 342).

On July 3, 2025, Defendants submitted an *Informative Motion regarding Submitting Forensic Report* and a *Joint Motion Submitting Forensic Report*. (Docket Nos. 350 and 352, respectively). The Government responded. (Docket No. 353).

On July 8, 2025, the Court ordered Defendants to provide under seal all communications between defense counsel and the independent forensic investigator, Garrett Discovery Inc., from May 27 to July 3, 2025. (Docket No. 355). The Court also ordered the Government to file an informative motion detailing the exact dates and what specific materials they provided to Defendants for their independent forensic examination. (Docket No. 354). After receiving the parties' motions, the Court issued the following Order on July 18, 2025:

> Having reviewed the record and recent informative motions regarding Defendants' communications with Garret Discovery Inc. and discovery productions from the Government, it is clear Defendants had ample time to retain a forensic expert and retrieve the mirror images of the seized electronic devices from

>       the Government for an independent forensic
>       examination. Yet, the Court notes that the
>       Informative Motion and Joint Motion submitting
>       Forensic Report filed on July 3, 2025,
>       contained only a letter regarding Garret
>       Discovery Inc.'s initial review of the limited
>       materials provided by Defendants instead of an
>       expert forensic analysis report. The Court
>       advises Defendants that the **July 24, 2025,**
>       deadline to submit a further motion to
>       suppress regarding the seized electronic
>       devices or any other pretrial motions is
>       final. **No extensions shall be granted.**

(Docket No. 365).

On July 23, 2025, Defendants filed for reconsideration of this order and extension of the final deadline, or in the alternative, requested that this Court certify this issue for interlocutory appeal or recommend mandamus. (Docket No. 366). Additionally, they renewed their argument to compel discovery from the Government. Id. The Court denied this reconsideration on July 24, 2025, providing a thorough description of this case's timeline; opportunities Defendants have had to conduct necessary discovery, report independent forensic examination, and file additional motions; and the misrepresentations defense counsel has made to the Court. (Docket No. 367).

Also on July 24, 2025, Defendants filed their *Second Motion to Suppress*, rehashing claims they have previously raised across various motions and presenting only one new argument – that the electronic devices were unconstitutionally searched after the

expiration of the warrant authorizing forensic analysis on the devices. (Docket No. 368). The Government filed its *Response* on August 7, 2025. (Docket No. 376).

## II.  APPLICABLE LAW

### A. The Fourth Amendment

The Fourth Amendment to the United States Constitution ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched." U.S. Const. amend. IV. The Fourth Amendment requires that an "application for an arrest warrant contain sufficient information to allow the issuing official . . . to 'make a practical, common-sense decision whether, given all the circumstances set forth in the [application] before him . . . there is a fair probability' that a crime has been committed." United States v. Barbosa, 896 F.3d 60, 67 (1st Cir. 2018) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

"A warrant application must establish 'probable cause to believe that (1) a crime has been committed – the "commission" element, and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called "nexus" element.'"

United States v. Bregu, 948 F.3d 408, 414 (1st Cir. 2020) (quoting United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005)). Probable cause is a "fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 243-44. In other words, probable cause "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014). When determining whether probable cause exists, courts look at the "totality of the circumstances." Bregu, 948 F.3d at 414 (citing Gates, 462 U.S. at 232). The Government bears the burden of establishing probable cause. See United States v. Bizier, 111 F.3d 214, 217 (1st Cir. 1997) (citations omitted).

The exclusionary rule makes the Fourth Amendment enforceable by prohibiting the fruits of an unreasonable search or seizure from being admitted at trial. See United States v. Camacho, 661 F.3d 718, 724 (1st Cir. 2011); see also Wong Sun v. United States, 371 U.S. 471, 484-85 (1963) (discussing the "fruits" of unreasonable searches and seizures). When a defendant moves to suppress evidence under the Fourth Amendment, he has the burden of showing his Fourth Amendment rights were violated. United States v. Rheault, 561 F.3d 55, 58-59 (1st Cir. 2009) (citing Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978)).

### B. *Franks v. Delaware*[5]

Generally, applications and affidavits in support of an arrest or search warrant are "presumptively valid." Barbosa, 896 F.3d at 67 (quoting United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013)). However, in certain circumstances, "a defendant may be able 'to rebut this presumption and challenge the veracity' of the warrant application" at a pretrial Franks hearing. Id. (quoting United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015)). There is no right to a Franks hearing. Rather, a defendant "must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." United States v. Centeno-González, 989 F.3d 36, 50 (1st Cir. 2021) (emphasis added). Then, "for the defendant to be entitled to relief, the allegedly false statement must be necessary to the finding of probable cause." Id. (emphasis added).

Material omissions may also serve as the basis for a Franks challenge, but: (1) "the omission must have been either intentional or reckless" and (2) "the omitted information, if incorporated into the affidavit, must be sufficient to vitiate probable cause." United States v. Tanguay, 787 F.3d 44, 49 (1st Cir. 2015); *see*

---

[5] 438 U.S. 154 (1978).

United States v. Castillo, 287 F.3d 21, 25 & n.4 (1st Cir. 2002).

However, since "there is no requirement that every shred of known

information be included in a warrant affidavit, the omission of a

particular detail, without more, is not enough to satisfy the mens

rea element of the *Franks* test." Tanguay, 787 F.3d at 49.

Therefore, an omission only triggers the exclusionary rule if it

is designed to mislead or is made "in reckless disregard" of

whether it would mislead the magistrate in an appraisal of the

affidavit. Id. Such recklessness may be inferred directly from an

omission "only if 'the omitted information was *critical* to the

probable cause determination.'" Id. (quoting Burke v. Town of

Walpole, 405 F.3d 55, 81 (1st Cir. 2005)). Notably, "even negligent

omissions of highly probative information . . . do not satisfy

this strict standard." Id.

The First Circuit has "made abundantly clear that, because an

application supporting a warrant is presumptively valid, it is

incumbent on the defendant to show that he is entitled to a Franks

hearing." Centeno-González, 989 F.3d at 50 (internal quotation

marks and citation omitted). In the Franks opinion, the Supreme

Court explained that "allegations of deliberate falsehood or of

reckless disregard for the truth . . . must be accompanied by an

offer of proof." 438 U.S. at 171 (emphasis added). Meaning, a

defendant must offer "more than conclusory [allegations] and

[they] must be supported by more than a mere desire to cross examine." Id. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." Id. The allegations "should point out specifically the portion of the warrant affidavit that is claimed to be false . . . and . . . be accompanied by a statement of supporting reasons." Id.

Furthermore, to overcome the presumptive validity of an application supporting a search warrant, defendants must do more than construct self-serving statements that refute the warrant affidavit. United States v. Andujar-Ortiz, 575 F.Supp. 2d 373, 377 (D.P.R. 2008) (finding that "a Defendant's self[-]serving statement is not a sufficient offer of proof"); see United States v. McDonald, 723 F.2d 1288, 1294 (7th Cir. 1983). "[F]lat denials of allegations . . . fall short of the 'substantial preliminary showing' required to justify a Franks hearing because this only 'set[s] up a swearing contest.'" United States v. Pérez-Greaux, 83 F.4th 1, 33 (1st Cir. 2023) (citation omitted). Thus, a "flat denial alone 'do[es] not demonstrate a substantial possibility of affiant perjury.'" Id. (citation omitted); see also United States v. Southard, 700 F.2d 1, 10 (1st Cir. 1983) (holding bare denials of facts stated in law enforcement affidavits "do not demonstrate a substantial possibility of affiant perjury" and thus fail to

help defendants meet a "substantial preliminary showing" of falsehood).

### C. Discovery in Criminal Cases

Federal Rule of Criminal Procedure 16 governs a motion to compel in criminal discovery. Under the rule,

> [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:(i) the item is material to preparing the defense;(ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). Should a party fail to comply with the obligations of Rule 16, the district court may "order that party to permit the discovery or inspection . . . and prescribe other just terms and conditions," among other remedies. Fed. R. Crim. P. 16(d)(2)(A).

Defendants, as the moving party, bear the burden of proof of showing materiality. United States v. Goris, 876 F.3d 40, 44 (1st Cir. 2017). Materiality requires showing "some indication" that pretrial disclosure of the information sought "would have the enabled the defendant significantly to alter the quantum of proof in his favor." Id. at 45 (citations omitted). If a "defendant's

discovery request is grounded in a speculative theory, a district court's decision to deny that request is not an abuse of discretion." Id. The Government cannot disclose what it does not have, and Rule 16(a)(1)(E) does not apply to a document until it is created. *See* United States v. Amaya-Manzanares, 377 F.3d 39, 43 (1st Cir. 2004).

Similarly, the Government's obligations under Brady "only extend to information in its possession, custody, or control." United States v. Hall, 434 F.3d 42, 55 (1st Cir. 2006). Brady requires the Government "to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." United States v. Prochilo, 629 F.3d 264, 268 (1st Cir. 2011) (citing, *inter alia*, Brady, 373 U.S. at 87). "Evidence is 'favorable to the accused' if it is either exculpatory or impeaching in nature and 'material' if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different." Prochilo, 629 F.3d at 268 (citations omitted).

Where a claim of Brady error is advanced, "the defendant bears the burden of showing a likelihood of prejudice stemming from the government's nondisclosure." United States v. Simon, 12 F.4th 1, 51 (1st Cir. 2021) (internal quotation marks and citation omitted). The defendant must "'articulate with some specificity what

evidence he hopes to find in the requested materials, why he thinks the materials contain this evidence, and, finally, why this evidence would be both favorable to him and material.'" Id. (quoting Prochilo, 629 F.3d at 269). *See* Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one.").

Furthermore, "[j]ust as the government is not entitled to obtain all of the evidence or information that a defendant has compiled in preparation for trial, *Brady* does not entitle a defendant to obtain all of the evidence or information that the government has compiled in the course of its investigation." United States v. Urciuoli, 470 F.Supp. 2d 109, 113 (D.R.I. 2007); *see* Pennsylvania v. Ritchie, 48 U.S. 39, 59 (1987) ("A defendant's right to discover exculpatory evidence does not include the unsupervised right to search through the [government's] files"). Brady is not a requirement upon the Government to provide verbatim accounts of "everything that may be of interest or even useful to defense counsel[, n]or does Brady require disclosure of every fact that might be viewed as favorable to a defendant, regardless of its significance." Urciuoli, 470 F.Supp. 2d at 113; *see* Bagley, 473 U.S. at 675 n.7.

"In Giglio, the Supreme Court recognized the prosecution's Brady obligation includes the disclosure of information

potentially useful to impeaching the credibility of a government witness where that information is favorable and material to guilt or punishment." Roe v. Lynch, 997 F.3d 80, 82 (1st Cir. 2021); *see also* Giglio, 405 U.S. at 154. This does not "automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the offense but not likely to have changed the verdict.'" Id. (citation omitted). To succeed on a Giglio claim, a defendant must show that: (1) the evidence at issue is favorable to him because it is impeaching of a government witness; (2) the government suppressed the evidence either inadvertently or willfully; and (3) prejudice ensued. United States v. Ramos-Baez, 86 F.4th 28, 57 (2023); *see* Giglio, 405 U.S. at 154; Raymundí-Hernández, 984 F.3d at 159-60.

Additionally, reports, memoranda, and other internal government documents made by a government attorney or agent investigating the case are not subject to production under Rule 16(a)(1)(E). *See* Fed. R. Crim. P. 16(a)(2). According to Fed. R. Crim. P. 16(d)(1), "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." A court's "finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." United States v. Padilla-Galarza, 990 F.3d 60, 77 (1st Cir. 2021).

### D. Interlocutory Appeal and Mandamus

To certify an issue for interlocutory appeal under 28 U.S.C. § 1292(b), the statute requires as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

As to a writ of mandamus, such relief must be sought from the Court of Appeals and there are "stringent requirements and [it] is generally thought an inappropriate prism through which to inspect exercises of judicial discretion." Da Garcia v. Souza, 991 F.3d 60, 64 (1st Cir. 2021) (internal quotation marks and citations omitted). Therefore, "[o]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary remedy." Id.

Criminal No. 22-232 (RAM)                                                17

(internal quotation marks and citations omitted); *see also* <u>Cheney</u>

<u>v. U.S. Dist. Ct. for D.C.</u>, 542 U.S. 367 (2004).

### III. DISCUSSION

### A. Defendants again fail to adequately show that any pre-warrant extractions occurred on the electronic devices[6]

Defendants argue that warrantless searches of their

cellphones occurred between February 5 and 9, 2021, in violation

of the Fourth Amendment. (Docket No. 368 at 13-16). The Government

highlights that "despite being allowed several weeks to obtain

*actual evidence* supporting their claims," Defendants have attached

nothing new in support of this *Second Motion to Suppress*. (Docket

No. 376 at 1-2).

The Court finds that Defendants fail to present any new

corroborating evidence that differs from their original *Motion to*

*Suppress* in support of their assertion that warrantless cell phone

extractions occurred in early February 2021, prior to the issuance

of warrants on February 23. In fact, rather than substantiating

this claim, the limited amount of information provided from their

expert – in the form of a letter after an initial review of the

limited materials provided by Defendants – made no conclusion

---

[6] The Court found Defendants have a sufficiently substantial privacy interest
in the devices seized from their residence to establish standing. However, they
lack standing to challenge the forensic analysis of co-defendant Ivelisse
Alvarez-Sepulveda's cell phone since she voluntarily released it to law
enforcement at a different location and it was not seized from Defendants'
residence. (Docket No. 328 at 52-54; *see* Docket No. 288-3 ¶ 9).

whatsoever that the devices were searched prior to June 24, 2021. (*See* Docket Nos. 350 and 352). Defendants provided no further report or updates from their expert with this *Second Motion to Suppress*.

Accordingly, for all the reasons laid out in its Opinion and Order issued May 13, 2025, as well as any subsequent filings regarding an expert's analysis of materials related to the seized electronic devices, the Court **DENIES** Defendant's request for suppression of evidence derived from pre-warrant searches of the electronic devices.

## B. Extractions of data from the electronic devices on June 24, 2021, did not violate Defendants' constitutional rights

Defendants argue that the June 24, 2021, extractions of data from the seized electronic devices were outside the warrants' scope, thus violating the warrants' temporal limits and invalidating the evidence. (Docket No. 368 at 16-20). They assert the warrants had to be executed within fourteen days of the February 23 issuance, and that once the warrants' deadlines had passed, "any further search of the devices required either a new warrant or a recognized exception (none of which existed)." Id. at 17-18. Defendants contend that allowing use of data from the June 24 extractions would "condone an end-run around Rule 41 and the

Fourth Amendment," and they highlight that the Government has never proffered any justification for the belated search. Id. at 18-30.

The Government asserts that while extractions for the electronic devices Defendants reference occurred in June 2024, that is not when the warrants were executed – rather, initial examinations occurred within the fourteen-day warrant period. (Docket No. 376 at 2-6). It contends that "standard analysis process" following the turning over of the devices to forensic agents on February 24 and March 1, 2021, included "inspecting and attempting to open the devices without the use of forensic tools." Id. at 6. The Government attached notes to that end as Exhibit 1. (Docket No. 376-1).

The Government avers that Fed. R. Crim. P. 41(e)(2)(B) contemplates a "two-stage search of electronic devices": (1) the seizure and copying of information; and (2) subsequent copying or review of said information. (Docket No. 376 at 4-5). Accordingly, the Government argues that "even a brief, cursory initial search of a cell phone's data would constitute 'execution' of the warrant" – significantly reducing an owner's expectation of privacy in a cell phone; and "[s]o long as the warrant was executed within the 14-day period, a subsequent Cellebrite extraction and analysis (stage-two) would be authorized by the warrant." Id. at 3-6.

"Given the advent of virtually unlimited computer and iPhone storage capacity, searches of electronic devices present unique issues regarding data retention, and the modes of execution of the search of an electronic database." United States v. Gong, No. 20-10266, 2024 WL 5057699, at *1 (D. Mass. Dec. 10, 2024). Fed. R. Crim. P. 41(e)(2)(B) addresses warrants seeking electronically stored information:

> A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. **Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant.** The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

While a "protracted delay in conducting a review [of electronic devices] might risk the dissipation of probable cause for a continued search," the First Circuit has not "place[d] bright-line limits on the time taken by the government to complete its analysis of seized material." Gong, 2024 WL 5057699, at *1 (referencing United States v. Aboshady, 951 F.3d 1, 5-7 (1st Cir. 2020) (finding that while "unreasonable delay in conducting a search that had been authorized by a warrant could result in the lapse of probable cause," there was no evidence on the record to sufficiently show "probable cause had lapsed at the time any

particular search of the data may have been conducted" – even if the government "may have run searches on that data for years afterwards") (internal quotation marks omitted)). Having reviewed the attached exhibit and parties' arguments, the Court finds that the Government has not run afoul of Defendants' constitutional rights.

Accordingly, the Court **DENIES** Defendants' request to suppress digital evidence obtained on or about June 24, 2021.

### C. Defendants again fail to meet the standard for a <u>Franks</u> hearing

Defendants again raise the argument that the Government's "material omission of the pre-warrant extractions" in the affidavits supporting the electronic devices warrants violates <u>Franks v. Delaware</u> and requires a hearing. (Docket No. 368 at 20-25). The Government asserts that Defendants "present nothing new in support of their already-rejected claims" – including their claim that the affidavits contained material omissions. (Docket No. 376 at 1-2).

Given the Court finds no reason to accept Defendants' allegations that pre-warrant extractions of the devices occurred, its reasoning for denying a <u>Franks</u> hearing from its Opinion and Order issued on May 13, 2025, apply here as well. (*See* Docket No. 328). The Court does not find that a pre-warrant extraction of

Criminal No. 22-232 (RAM)                                           22

digital evidence occurred, thereby negating Defendants'
allegations of material omissions in the affidavits presented to
the magistrate for issuance of the electronic devices warrants.

Accordingly, the Court **DENIES** Defendants' request for a
<u>Franks</u> hearing.

### D. **The Government did not violate Defendants' due process rights under <u>Brady</u>, <u>Giglio</u>, and Fed. R. Crim. P. 16**

Defendants raise once more their argument that the
Government's "failure to timely disclose critical forensic
evidence and related information" violates its obligations under
<u>Brady</u>, <u>Giglio</u>, and Fed. R. Crim. P. 16. (Docket No. 368 at 25-31).
Further, they contend this "pattern of non-disclosure and late
disclosure" severely prejudiced their ability to analyze the
digital evidence and prepare suppression arguments. <u>Id.</u>
Accordingly, Defendants assert that the Court should suppress the
affected digital extraction evidence or compel immediate
production of outstanding materials and issue appropriate
sanctions. <u>Id.</u>

The Government maintains that the Court should reject
Defendants' repeated contention that it violated <u>Brady</u> or <u>Giglio</u>
and their new request that the Court make a finding of misconduct
on the record. (Docket No. 376 at 6-8). The Government states that
Defendants fail to identify specific material evidence that has

been withheld, establish such evidence is favorable to them, or show they have been prejudiced by its suppression. Id. at 7. Moreover, the Government highlights that Brady is a trial right. Id. Further, the Government asserts that "Defendants' repeated baseless accusations warrant, at a minimum, the Court's admonishment." Id. at 7-8 (citing Fed. R. Civ. P. 11(b)(1)-(4); Local Rule 83 E; and several local district court cases).

The Court addressed this matter fully in its Opinion and Order denying the *Motion to Compel* and its reconsideration denial (*see* Docket Nos. 305 and 326); and again, most recently, the Court denied this request in its Opinion and Order issued July 24, 2025 (*see* Docket No. 367 at 15-16). Nothing has changed. As the Court found in its June 18 Order, "it is clear Defendants had ample time to retain a forensic expert and retrieve the mirror images of the seized electronic devices from the Government for an independent forensic examination." (Docket No. 365). The Court refers Defendants to its reasoning in the aforementioned Opinions and Orders. (*See* Docket Nos. 305, 326, and 367).

Accordingly, the Court **DENIES** Defendants' requests for: (1) suppression of digital evidence as a sanction for discovery breaches; (2) an order compelling any remaining discovery; and (3) further relief, such as additional time for expert analysis.

**E. The Court's denial of a continuance for their second suppression motion did not violate Defendants' due process rights and fundamental fairness**

Defendants raise the same arguments they presented in requesting reconsideration of the Court's July 18, 2025, Order. (Docket No. 368 at 31-38; *see* Docket No. 366). Defendants argue the "Court's refusal to grant even a modest extension of the suppression motion deadline, despite ongoing discovery delays entirely attributable to the [G]overnment, violated Defendants' constitutional right to due process and fundamental fairness." (Docket No. 368 at 31-38). Defendants again request the Court to certify "this significant due-process question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), or alternatively, indicate that it would support the defense's petition for mandamus relief." Id. at 37.

As the Court thoroughly dealt with this contention in its Opinion and Order issued on July 24, 2021, it encourages Defendants to re-visit its words again now. (*See* Docket No. 367). Succinctly put, the Court will not vacate its previous Opinion and Order, nor will it be extending any more deadlines. Furthermore, the Court will not certify this issue for interlocutory appeal or "recommend" mandamus. As stated before, contrary to Defendants' description of their actions, the record shows and the Court finds there to be a patent lack of diligence by defense counsel.

Defendants baldly allege that the "record conclusively demonstrates that defense counsel exhibited extraordinary diligence throughout the discovery and expert-retention process" – including initiating consultations as early as May 2025, "immediately upon recognizing forensic irregularities in the [G]overnment's disclosures." (Docket No. 368 at 33). Yet in the background section, Defendants state that "[b]y early 2025, the defense had reason to suspect both the pre-warrant phone search in early February 2021 and the post-warrant extraction in June 2021." (Docket No. 368 at 4). While Defendants state that "[t]o investigate these issues, defense counsel promptly requested critical forensic records from the prosecution," they do not explain why they failed to send any initial consultation messages to experts until late May 2025. (*See* Docket No. 368 at 4). Nor does it explain why they waited until after the reconsideration for their original *Motion to Suppress* was denied to then submit their *Motion to Compel* – especially if they believed they lacked the necessary materials for their pursuits. The Court refers readers to its Opinion and Order issued on July 24, 2025, for a more complete timeline of events. (*See* Docket No. 367).

As a result, the Court **DENIES** Defendants' request to certify this question for interlocutory appeal or indicate its support for a petition for mandamus relief.

## IV.  CONCLUSION

Accordingly, the Court **DENIES** Defendants' *Motion to Suppress Digital Evidence and for Related Relief* at Docket No. 368.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of August 2025.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE